**UNITED STATES of America, Plaintiff,**

v.

**James G. WINNINGHAM, Defendant.**

**Crim. No. 4–96–134.**

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 20, 1996.

D. Gerald Wilhelm, Assistant United States Attorney, for Plaintiff.

Robert Richman, Assistant Federal Public Defender, for Defendant.

## ORDER

MONTGOMERY, District Judge.

### INTRODUCTION

This matter is before the Court pursuant to both parties objections to the December 5, 1996 Report and Recommendation ("R & R") of Magistrate Judge Raymond L. Erickson. In the R & R, Judge Erickson recommended this Court deny Defendant's motion to dismiss, but grant in part[1] Defendant's motion to suppress evidence. After conferring with the parties on December 20, 1996, the Court has decided to adopt Judge Erickson's R & R.

### BACKGROUND

The factual background for this matter is clearly and concisely set forth in the R & R. The Court incorporates those facts by reference for purposes of the present objections.

### DISCUSSION

A district court must make an independent, de novo determination of those portions of a report and recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate

---

1. The R & R recommends suppressing the evidence "except as to that evidence which was seized pursuant to that portion of the Warrant which authorized the search and seizure of '[v]isual materials in all forms depicting minor[']s

judge. *See* 28 U.S.C. § 636(b)(1)(C) and Local Rule 72.1(c)(2).

The Court has made a *de novo* review of the record as well as the applicable case law. For the same reasons stated in Judge Erickson's thorough discussion on the motions, the Court will adopt the recommendations detailed in the R & R.

### CONCLUSION

Based upon the foregoing, and all of the files, records, and proceedings herein, the Court **ADOPTS** the Report and Recommendation of Magistrate Judge Erickson.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss Indictment (Doc. No. 10) is **DENIED**;

2. Defendant's Motion to Suppress Evidence Obtained by Search and Seizure (Doc. No. 16) is **GRANTED,** except as to that evidence which was seized pursuant to that portion of the Warrant which authorized the search and seizure of "visual materials in all forms depicting minor[']s genitalia and * * * sexual contact involving minors"; and,

3. Defendant's Motion to Suppress Statements, Admissions and Answers (Doc. No. 17) is **DENIED as MOOT.**

## FINDINGS AND RECOMMENDATION

[December 5, 1996]

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A) and (B), upon the following Motions of the Defendant:

1. Motion for Disclosure of 404 Evidence.[1]

---

genitalia and * * * sexual contact involving minors.'"

1. The Government has represented that the Rule 404(b) evidence, which comes within its possession, will be disclosed to the Defendants by no

2. Motion to Compel Attorney for the Government to Disclose Evidence Favorable to the Defendant.[2]

3. Motion for Discovery.[3]

4. Motion for Early Disclosure of Jencks Act Material.[4]

5. Motion for Government Agents to Retain Rough Notes.[5]

6. Motion for Bill of Particulars.[6]

7. Motion to Suppress Evidence Obtained by Search and Seizure.

8. Motion to Suppress Statements, Admissions and Answers.[7]

9. Motion to Dismiss Indictment.

A Hearing on these Motions was conducted on November 8, 1996,[8] at which time the Defendant appeared personally, and by Robert D. Richman, Assistant Federal Defender, and the Government appeared by D. Gerald Wilhelm, Assistant United States Attorney.

As to those Motions which remain unresolved, we recommend that the Motion to Dismiss be denied, and that the Motion to Suppress be denied, in part, and granted, in part.

## II. *Findings of Fact*

In an Indictment, that was filed on October 16, 1996, the Defendant was charged with a single Count of knowingly possessing "3 or more books, magazines, periodicals, film, video tapes and other matter, which contained visual depictions that had been mailed, and had been shipped or transported in interstate or foreign commerce, and which were produced using materials which had been mailed and so shipped and transported, which visual depictions were of minors engaging in sexually explicit conduct, all in violation of Title 18, United States Code,

later than fifteen days before the Trial date. As a consequence, we grant these Motions, but subject to the fifteen-day time constraint.

2. The Government has acknowledged its obligations under *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and their progeny, and has advised that this information either has been, or will be, produced to the Defendants. Therefore, the Motion is granted. Our grant of this Motion, however, should not be construed as accepting the Defendant's characterization of each of the categories of information, which are enumerated in his Motion, as properly constituting *Brady* materials. Accordingly, in generally granting this Motion, we necessarily leave the parties, in the first instance, to determine what evidence requires production, pursuant to *Brady*, to *Giglio*, or to their offspring.

3. Consistent with our usual practice, we advised the Defendant that discovery would be granted to the full extent contemplated by Rules 16 and 26.2, Federal Rules of Criminal Procedure, by *Brady*, and its progeny, and by the Jencks Act. We further explained that, if something beyond this generalized scope of discovery was being requested, then the Defendant would be obliged to demonstrate the justification for a more expansive breadth of disclosures. No such showing has been made by the Defendant and, therefore, the Motion for Discovery will be granted as so constrained.

4. The established rule in this Circuit is that, ordinarily, the Government is not required to disclose Jencks Act material prior to the direct examination of the witness to whom the material

pertains. See, *United States v. Douglas*, 964 F.2d 738, 741 (8th Cir.1992); *United States v. White*, 750 F.2d 726, 729 (8th Cir.1984). Here, however, the Government has volunteered to produce all Jencks Act material by no later than three days before Trial. Accordingly, we grant this Motion but subject to the three-day time constraint.

5. The Government has represented that the case agents, who were assigned to this matter, have been directed to retain their rough notes for potential disclosure to the Defendant and, therefore, this Motion is granted.

6. Given the unique facts of this case, the Government has agreed to provide the Defendant with a Bill of Particulars and, as a consequence, this Motion is granted.

7. The Government advises that it does not intend to offer any statements or admissions of the Defendant at Trial and, therefore, we recommend that this Motion be denied as moot.

8. At his request, the Defendant was granted leave to file a post-Hearing brief that would address his Motions to Suppress and his Motion to Dismiss the Indictment. In addition, the Court granted the Government leave to submit a response to the Defendant's filing. The last submission was received by the Court on November 18, 1996—at which time the Record was closed, and the Motions were taken under advisement. See, *Title 18 U.S.C. § 3161(h)(1)(F) and (J)*; *Henderson v. United States*, 476 U.S. 321, 330–32, 106 S.Ct. 1871, 1876–78, 90 L.Ed.2d 299 (1986); *United States v. Blankenship*, 67 F.3d 673, 676–77 (8th Cir.1995).

Section 2252(a)(4)(B)." The alleged offense is said to have occurred on December 26, 1995. As pertinent to these charges, and to the pending Motions to Dismiss and to Suppress, the relevant facts may be briefly summarized.[9]

On November 10, 1995, a social worker in the Defendant's apartment complex, who had both the responsibility and the authority to inspect the individual apartment residences, in order to assure that the premises and furnishings were being properly maintained, surveyed the Defendant's apartment. In the course of that inspection, the social worker uncovered a "pile of polaroid photos of nude girls" in a dresser drawer. According to the social worker's description, "[s]ome of the girls appeared to be anywhere from four years on up to eleven and fourteen years old," and "some of the girls appeared to be beaten and spanked, indicating in one photo the girl had a red buttock and a wooden stick was laying in the background." In addition, the social worker reviewed a "stack of letters" that had been intermingled with the photographs. Some of these letters were from out-of-state, and appeared to have been written to young girls and, in one, the Defendant is purported to have written that "Infantilism is my thing."

Believing that, as a social worker, he had a legal and moral obligation to report his discovery to the authorities, on December 20, 1995, the social worker brought the matter to the attention of Sergeant Eugene Polyak ("Polyak"), an 11–year veteran of the St. Paul Police Department, who was then assigned to the Vice Unit. On December 26, 1995, Polyak applied to a State District Court for a Warrant to search the Defendant's apartment. In addition to the observations of the social worker, which we have previously detailed, Polyak advised that the Defendant had prior convictions, in 1985, for "Use of Minors in Sexual Performance, and [for] Possession of photographs of minors-sexual conduct." [10] In particular, Polyak sought the Court's permission to search the Defendant's apartment for the following evidence:

1) Visual materials in all forms depicting minors [sic] genitalia and or sexual contact involving minors.

2) Any and all forms of communications with or about sexual performance by minors or concerning pedophile activity.

During the search which ensued on that same day, police officers seized certain items of mail, that were addressed to Post Office Box 2273, which was listed to the Defendant; a large quantity of sexual letters written to young females; a large quantity of pictures involving nude minors; eight video tapes; four books;[11] an audio tape; four notebooks; and a small file box which contained letters to minors and pictures of minors.

Subsequently, in June of 1996, Ronald H. Miller ("Miller"), a Postal Inspector with the United States Postal Service, applied for a Warrant to search a first-class letter, that was described as follows:

---

**9.** Rule 12(e), Federal Rules of Criminal Procedure, provides that, "[w]here factual issues are involved in determining a motion, the court shall state its essential factual findings on the record." As augmented by our recitation of factual findings in the course of our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion. Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require. *United States v. Moore*, 936 F.2d 287, 288–89 (6th Cir.1991), cert. denied, 505 U.S. 1228, 112 S.Ct. 3052, 120 L.Ed.2d 918 (1992); *United States v. Prieto–Villa*, 910 F.2d 601, 610 (9th Cir.1990).

**10.** In actuality, the Defendant's convictions were reversed by the Minnesota Court of Appeals, as

the Jury had been mistakenly allowed to review certain letters, which had not been admitted into evidence, and which the Trial Court had determined to be highly prejudicial. See, *State v. Winningham*, 406 N.W.2d 70 (Minn.App.1987), rev. denied (Minn., July 15, 1987). On remand, the Defendant entered an *Alford* plea to the same charges, in exchange for a sentence equivalent to the time that he had already served. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (Court may accept a guilty plea from a defendant, who maintains his innocence, if the Court finds an adequate factual basis for the plea).

**11.** According to Polyak's Inventory Receipt, the books were titled as follows: "Canada Naturally"; "Sex with Daddy"; "Amateur Contact"; and "Daddy + Tammy."

A letter with a return address of "Becky", P.O. Box 3301, Auburn, ME 04210. The postmark on the envelope is from Portland, Maine[,] with a date of 11 Jun 996. The envelope contains first-class postage in the form of a preprinted Liberty Bell Stamp. The envelope is addressed to "Jim", P.O. Box 2273, St. Paul, MN 55102. The envelope measures approximately 9-½" × 4" and on the reverse is a childlike drawing of a girl with a balloon and a swing set.

In support of the Warrant, Miller advised that, in October of 1995, he had been contacted by a law enforcement officer, in Winnipeg, Manitoba, concerning an advertisement in a sexually-oriented magazine that had been placed by a correspondent in St. Paul. On December 28, 1995, Miller responded to the advertisement, in an undercover capacity, by using the pseudonym "Ronnie." The Defendant replied to that letter, in early January of 1996, and Miller continued to correspond with the Defendant, still undercover, through March of that year. The Defendant's letters contained graphic references to sexual acts involving minor females. Given the foregoing, and the Defendant's prior criminal history as a pedophile, Miller expressed his belief that the "Becky" letter contained evidence of a violation of Title 18 U.S.C. § 2252(a)(1). On June 18, 1996, based upon Miller's application, United States Magistrate Judge J. Earl Cudd issued a Warrant to search the "Becky" letter, and that search was completed on that same date.[12]

In his Motion to Dismiss, the Defendant contends that we are without jurisdiction to address the charges against the Defendant, because the prohibitions of Title 18 U.S.C. § 2252(a)(4)(B), under which he was charged, are beyond Congress's power to legislate under the Constitution's commerce clause. See, e.g., *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). As for his Motion to Suppress the Warrant

issued by the State District Court on December 26, 1995, the Defendant urges that the Warrant was issued without probable cause, that the Warrant was unconstitutionally overbroad, and that the search, which was authorized by that Warrant, exceeded the scope of the authorization given. Since the Defendant's Motion to Dismiss questions our jurisdiction to hear any aspect of this matter, we address that Motion first.

### III. *Discussion*

A. *The Defendant's Motion to Dismiss.* Recently, in *United States v. McMasters*, 90 F.3d 1394, 1397 (8th Cir.1996), our Court of Appeals explained the Supreme Court's decision, in *Lopez*, as follows:

> In Lopez, the Supreme Court held that the Gun Free School Zones Act, 18 U.S.C. § 922(q), exceeded Congress's authority under the Commerce Clause. The Court noted that, under its commerce power, Congress may: (1) regulate the use of the channels of interstate commerce; (2) regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though a threat may come only from intrastate activities; (3) regulate those activities that substantially affect interstate commerce. * * * The Court briefly concluded that the activity regulated by the statute, possession of guns within 1000 feet of a school, did not fit either of the first two categories, and focused on the third category.

As to the third category of activities which properly bear regulation under the Commerce Clause, the Supreme Court noted, in *Lopez*, that the Gun Free School Zones Act contained "no jurisdictional element which would ensure, through case-by-case inquiry, that the [activity] in question affects interstate commerce," and that Congress had made no legislative findings that the activity so affected interstate commerce. *United States v. Lopez*, supra at —— —— ——, 115 S.Ct. at 1631–32. Accordingly, since the

---

12. Other than on jurisdictional grounds, we do not understand the Defendant to contest the validity of the second Search Warrant. We have reviewed Miller's application, together with the Warrant that issued, and we find no deficiencies that would require suppression. Since the Defendant does not advance a specific challenge to

this Warrant, we have no occasion to address the propriety of that Warrant further, except to direct the Government to substitute an executed copy of the Warrant application, as it agreed to do at the Hearing in this matter. Of course, if an executed copy is not extant, this issue may be revisited.

Court determined that the statute, "by its terms ha[d] nothing to do with 'commerce' or any sort of economic enterprise," and "contain[ed] no jurisdictional element which would ensure * * * that the firearm possession in question affects interstate commerce," there could be no jurisdiction, under the Commerce Clause, to undergird a Federal offense.

■ Title 18 U.S.C. § 2252(a)(4)(B), under which the Defendant was indicted, provides as follows:

> Any person who knowingly possesses 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer if—
>
> (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
>
> (ii) such visual depiction is of such conduct;
>
> shall be punished as provided in subsection (b) of this section.

Plainly, in distinction to the Gun Free School Zones Act, Section 2252(a)(4)(B) contains an express requirement that the prohibited articles, or one or more of their components, have been "mailed," "shipped," or "transported in interstate or foreign commerce." Accordingly, under *Lopez*, Section 2252 passes constitutional muster, since that Section regulates products, or product components, which are *in* interstate commerce and, therefore, we are confronted with a regulation that falls within the second category of permissible regulation, under the Commerce Clause.[13] See, e.g., *United States v. McMasters*, supra at 1398; *United States v. Folen*, 84 F.3d 1103, 1104 (8th Cir.1996); *United States v. Robinson*, 62 F.3d 234, 236–37 (8th Cir.1995); *United States v. Mosby*, 60 F.3d 454, 456 n. 3

---

**13.** In further contrast to *Lopez*, the legislative history of Section 2252 voices clear congressional findings about the effect of child pornography on interstate commerce. For example, in originally enacting Pub.L. 95–225, in 1978, Congress observed:

> It is the [Judiciary] Committee's intention that the government will have the affirmative burden of showing that the person charged knew or should have known that the materials described under 2251(a) and (b) will be transported in interstate or foreign commerce or mailed. While the Committee recognizes that the jurisdictional element is often a difficult one to prove, it nonetheless believes that this requirement is necessary to preserve the balance between the law enforcement responsibilities of federal officers on one [h]and, and their state and local counterparts, on the other.
>
> In addition, the Committee intends that the issue of whether the jurisdictional element has been met will be a question decided on a case-by-case basis.

1978 *U.S.C.C.A.N.* 40, 53 (1978). While this excerpt from the Committee Report references Sections 2251(a) and (b), the context of the Report makes plain that the reference pertains to the language of the Public Law which later was codified as Section 2252. Moreover, the pertinent legislative history of Section 2252 reveals that this statement of intent was premised upon Congress's finding that "child pornography and child prostitution have become highly organized, multimillion dollar industries that operate on a nationwide scale," and "that such prostitution and the sale and distribution of such pornographic materials are carried on to a substantial extent through the mails and other instrumentalities of interstate and foreign commerce." *Id.* at 42–43.

Of course, the Defendant particularly complains about the prospect of being prosecuted for possessing an article, such as film, which does not constitute child pornography at the time that it was acquired, but which is later utilized to capture such indecency after it has traversed through interstate or foreign commerce. While we have found no reported legislative history for the amendment to Section 2252, in 1990, which added Subparagraphs (a)(3) and (4), see, 1990 *U.S.C.C.A.N.* 6472 *et seq.* (1990), by an amendment to Section 2252, which was enacted in 1986, Congress decided to regulate such articles, in the stream of commerce, in order to fill a perceived gap in the original legislation. As related in the legislative history of that amendment:

> This amendment was designed to insure that a person who is a producer of child pornography but who does not have a direct role in inducing a child's participation (for example, a person who buys photos from another, or who pirates them from other publications) cannot escape prosecution simply because he did not have direct contact with the child. Section 2151, the present production offense, seems to require such direct contact, and this amendment was designed to close that possible loophole.

1984 *U.S.C.C.A.N.* 492, 496 (1984). We are advised that, at least in part, this is the type of conduct of which the Defendant is accused.

(8th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 938, 133 L.Ed.2d 864 (1996). Since Section 2252 contains an express jurisdictional element, which ensures that it regulates only the possession of prohibited articles that have traveled, in whole or in part, in interstate commerce, we conclude that Section 2252 is constitutional on its face.[14]

Up to this point, the Defendant does not appear to take exception, for he argues that, even if the end product of child pornography may properly be regulated when in the stream of interstate commerce, Section 2252 is unconstitutional, under the Commerce Clause, because it seeks to regulate child pornography which has not been transported in interstate commerce, merely because one of its components had been so transported. As stated by the Defendant:

> In this case, the government alleges that Mr. Winningham violated § 2252 by possessing child pornography which was produced using Polaroid film that was manufactured in Massachusetts and traveled interstate to Minnesota. There is no allegation that the alleged pornography traveled in commerce, or that the child depicted in the photographs traveled interstate. The only link to interstate commerce is that the film stock was manufactured elsewhere. This is not a sufficient basis to exert federal power under [the] commerce clause.

14. Although the Defendant relies upon authorities under the Child Support Recovery Act, Title 18 U.S.C. § 228, the legislative underpinnings of that statute are wholly dissimilar from those upon which Section 2252 is founded. Accordingly, we find the Defendant's citation to *United States v. Parker*, 911 F.Supp. 830 (E.D.Pa.1995), and in *United States v. Bailey*, 902 F.Supp. 727 (W.D.Tex.1995), to be inapposite, and we expressly do not consider whether either of these two decisions reflect an accurate statement of Commerce Clause law. See, *United States v. Hampshire*, 95 F.3d 999, 1002 (10th Cir.1996) (reviewing pertinent cases and concluding that the Child Support Recovery Act is a proper exercise of Congress's powers under the Commerce Clause); *United States v. Mussari*, 95 F.3d 787, 789 (9th Cir.1996) (reaching same conclusion); *United States v. Sage*, 92 F.3d 101, 107 (2d Cir. 1996) (reaching same conclusion).

15. Strictly viewed, we may be immersing ourselves in the irrelevant by addressing this issue,

Accordingly, we understand the Defendant to be urging that Section 2252 is unconstitutional—if not on its face, then as it is applied. We find this argument to be unavailing.[15]

■ First, we think that such a fact-driven argument is precluded in the context of a Rule 12 Motion to Dismiss. See, e.g., *United States v. Najarian*, 915 F.Supp. 1460, 1472 n. 19 (D.Minn.1995). Whether the facts, as they may ultimately be developed at Trial, should demonstrate a sufficient nexus between any of the articles that were seized from the Defendant, and interstate commerce, cannot be reliably forecast on the limited Record before us. As Rule 12(b), Federal Rules of Criminal Procedure, clearly provides, "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial." Here, the Government has alleged, in the Indictment that was returned against the Defendant, that the articles for which he was charged were mailed, shipped or transported in interstate commerce, and we must accept these allegations as true for the purposes of a Motion to Dismiss. *United States v. Andreas*, 374 F.Supp. 402, 406 (D.Minn.1974); *United States v. J.R. Watkins Co.*, 16 F.R.D. 229, 234 (D.Minn.1954); see also, *United States v. Sampson*, 371 U.S. 75, 78–79, 83 S.Ct. 173, 174–75, 9 L.Ed.2d 136 (1962); *United States v. Luros*, 243 F.Supp. 160, 165 (N.D.Iowa 1965), cert. denied, 382 U.S. 956, 86 S.Ct. 433, 15 L.Ed.2d 361 (1965).[16]

as the argument appears to be predicated on a disjunctive reading of the Indictment. Our reading, however, reflects that the Indictment charges the Defendant with knowingly possessing "3 or more" articles, which contained proscribed "visual depictions" that "had been mailed, * * * shipped or transported in interstate or foreign commerce, *and* which were produced using materials which had been mailed and so shipped and transported * * *." As so construed, the Indictment does not appear to charge the Defendant with a specific offense of possessing articles which had been "produced using materials" that were shipped in interstate commerce, but which had not been so transported as child pornography. Nevertheless, in the interests of completeness, we address the issue that the parties have squarely placed before us.

16. Accordingly, we find the Defendant's reliance upon *United States v. Denalli*, 73 F.3d 328 (11th Cir.1996), amended, 90 F.3d 444 (11th Cir.1996),

Moreover, even if we were presented with the unalterable fact that the Government's case was exclusively pinioned upon the Polaroid photographs, and with the further fact that, although the photographic film traveled in interstate commerce, the pornographic depictions were solely taken within the State of Minnesota, we would, nonetheless, find the Defendant's jurisdictional argument unconvincing. While the Defendant's contention appears to be one of first impression—at least in the context of Section 2252—we have found closely analogous authority to assist in resolving the issue before us.

In *United States v. Mosby*, supra, the defendant was charged with violating Title 18 U.S.C. § 922(g)(1) by "possess[ing], in or affecting commerce, * * * ammunition." Following a Verdict of guilt, the Trial Court granted the defendant's Motion for a Judgment of Acquittal, because the "cartridges possessed by [the defendant] were both manufactured and possessed entirely within the State of Minnesota." *Id.* at 455. On review, our Court of Appeals noted that, statutorily, the term "ammunition" was defined to mean either "ammunition [i.e., completed cartridges] or cartridge cases, primers, bullets or propellant powder," and, in reversing the Trial Court, the Court of Appeals reasoned as follows:

> [The defendant] possessed "ammunition" in two senses. [The defendant's] possession of the assembled cartridges, which are not in interstate commerce, is also possession of the individual components of the cartridges which are in interstate commerce. At least some of these components satisfy the definition of ammunition in § 921(a)(17). Thus, [the defendant's]

possession of these components is possession "in * * * commerce, * * * [of] ammunition." Thus, because we hold that [the defendant's] possession of completed cartridges is a possession of cartridge components that satisfy the definition of ammunition in § 921(a)(17), and that are in interstate commerce, we conclude that [the defendant] possessed ammunition in interstate commerce in violation of § 922(g).

*Id.* at 457.

We are satisfied that, if the components of ammunition, which have traveled interstate, are sufficient to cast the end product as being "in commerce," then the components of child pornography should have no less of an entangling effect. Accordingly, we are persuaded that if, as is plainly apparent from the face of Section 2252, Congress has concluded that the components of child pornography bear as much of a nexus to the conduct that it intends to proscribe through the regulation of the finished product, as the ingredients of ammunition bear to the finished cartridge, then the proscriptions of Section 2252 are well within Congress's powers under the Commerce Clause.[17] Cf., *United States v. Folen*, supra at 1104 (holding Title 18 U.S.C. § 842(i)(1) constitutional in outlawing the possession of explosives, which had been shipped in interstate commerce, even where the defendant was not personally responsible for the interstate transportation of the explosives possessed); *United States v. Bates*, 77 F.3d 1101, 1104 (8th Cir.1996) (same with respect to possession of firearms under Title 18 U.S.C. § 922(g)(1)), cert. denied, —— U.S. ——, 117 S.Ct. 215, 136 L.Ed.2d 149 (1996); *United States v. Robinson*, supra at 236–37 (same with respect to "carjacking" statute,

---

and *United States v. Pappadopoulos*, 64 F.3d 522 (9th Cir.1995), to be misplaced, as each involved the *sufficiency* of the evidence to demonstrate a nexus between a private residence and interstate commerce, under the Federal Arson Statute, Title 18 U.S.C. § 844(I). Compare, *United States v. McMasters*, 90 F.3d 1394, 1398–99 (8th Cir. 1996).

**17.** The purposes behind Section 2252 have been synopsized, by our Court of Appeals, in *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993), as follows:

> It is a goal of 18 U.S.C. §§ 2251–2258 to stamp out the production and distribution of child pornography, based upon conclusions in relevant literature and upon a legislative determination that child pornography is harmful to the child victim even years after the original misdeed took place.

An exercise of the Commerce Clause, which seeks to stamp out harm to victims, which might arise from the possession of ammunition or firearms by felons, would seem wholly compatible with the exercise of that same power to eradicate harm to the would-be victims of child pornography.

Title 18 U.S.C. § 2119). Here, Section 2252 contains an express jurisdictional element that will ensure that the Defendant's conduct will only be regulated if the offending articles of child pornography have been mailed, shipped, or transported, in whole or in part, in interstate commerce and, therefore, we find no unconstitutional exercise of Congress's Commerce Clause authority.

Accordingly, we recommend that the Defendant's Motion to Dismiss be denied.

B. *The Defendant's Motion to Suppress.*

1. *Standard of Review.* In the issuance of a Search Warrant, the Fourth Amendment dictates that an impartial, neutral and detached Judicial Officer will assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband.[18] *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *United States v. Johnson,* 64 F.3d 1120, 1126 (8th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 971, 133 L.Ed.2d 891 (1996). In order to find probable cause, it must be demonstrated that, in light of all the circumstances set forth in the supporting Affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular, designated place. *United States v. Gladney,* 48 F.3d 309, 313 (8th Cir.1995); *United States v. Tagbering,* 985 F.2d 946, 949 (8th Cir.1993). For these purposes, probable cause is "a fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983); see also, *Ornelas v. United States,* —— U.S. ——, ——, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996). Of course, "the touchstone of the Fourth Amendment is reasonableness" which, "in turn, is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette,* —— U.S. ——, ——, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996), quot-

ing *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991).

The Application and Affidavits, which support a request for a Search Warrant, "should be examined under a common sense approach and not in a hypertechnical fashion." *United States v. Williams,* 10 F.3d 590, 593 (8th Cir.1993). In conducting such an examination, the Court should review the affidavits as a whole, and not on a paragraph-by-paragraph basis. *United States v. Anderson,* 933 F.2d 612, 614 (8th Cir.1991); *United States v. Townsley,* 843 F.2d 1070, 1076–77 (8th Cir. 1988), cert. dismissed, 499 U.S. 944, 111 S.Ct. 1406, 113 L.Ed.2d 461 (1991). Moreover, the reviewing Court must not engage in a *de novo* review but, rather, should accord great deference to the decision of the Judicial Officer who issued the Warrant. *United States v. Maxim,* 55 F.3d 394, 397 (8th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 265, 133 L.Ed.2d 188 (1995); *United States v. Curry,* 911 F.2d 72, 75 (8th Cir.1990), cert. denied, 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). This mandated deference to the determination of the issuing Judicial Officer is consistent with the Fourth Amendment's sound preference for searches that are conducted pursuant to Warrants. *Illinois v. Gates,* supra at 236, 103 S.Ct. at 2331.

Of course, "[p]robable cause to issue a warrant must exist at the time it is issued." *United States v. Ozar,* 50 F.3d 1440, 1446 (8th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 193, 133 L.Ed.2d 128 (1995). "A delay in executing a search warrant may make probable cause fatally stale[,] [b]ut the lapse of time is not always the controlling factor." *United States v. Maxim,* supra at 397, quoting *United States v. Rugh,* 968 F.2d 750, 754 (8th Cir.1992); see also, *United States v. Macklin,* 902 F.2d 1320, 1326 (8th Cir.1990), cert. denied, 498 U.S. 1031, 111 S.Ct. 689, 112 L.Ed.2d 680 (1991). "There is no bright-line test for determining when information is stale." *United States v. Maxim,* supra at 398, quoting *United States v. Koelling,* 992 F.2d 817, 822 (8th Cir.1993).

---

18. Even where, as here, First Amendment interests are at stake, the requisite showing of probable cause, for the issuance of a Search Warrant, is the same as that applied in the exercise of the Fourth Amendment right to search and seize any other form of contraband. *New York v. P.J. Video, Inc.,* 475 U.S. 868, 875, 106 S.Ct. 1610, 1615, 89 L.Ed.2d 871 (1986).

Rather, the nature of the criminal activity under investigation must be considered. *United States v. Comeaux,* 955 F.2d 586, 589 (8th Cir.1992), cert. denied, 506 U.S. 845, 113 S.Ct. 135, 121 L.Ed.2d 89 (1992). "Where the affidavit recites facts indicating the presence of an ongoing, continuous criminal enterprise, the passage of time between the receipt of information and the search becomes less critical in assessing probable cause." *United States v. Rugh,* supra at 754. Similarly, the nature of the evidence sought by the Warrant can also minimize the importance of a time lapse. *United States v. Maxim,* supra at 397. In the final analysis, "[p]robable cause 'cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the warrant,'" for "[t]ime factors must be examined in the context of a specific case and the nature of the crime under investigation." *Id.,* quoting *United States v. Koelling,* supra at 822.

Of course, "[t]he fourth amendment requires that a search warrant describe with sufficient particularity the things to be seized in order to prevent a 'general, exploratory rummaging in a person's belongings.'" *United States v. Kail,* 804 F.2d 441, 445 (8th Cir.1986), quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). Since the degree of specificity, that is required in applying the particularity requirement, is flexible and may vary depending on the circumstances and the types of items involved, we apply a "practical accuracy" rather than a "technical nicety" standard. *United States v. Wayne* 903 F.2d 1188, 1195 (8th Cir.1990), citing *United States v. Johnson,* 541 F.2d 1311, 1313 (8th Cir.1976); see also, *United States v. Peters,* 92 F.3d 768, 769 (8th Cir.1996), citing *United States v. Lowe,* 50 F.3d 604, 607 (8th Cir. 1995), cert. denied, —— U.S. ——, 116 S.Ct. 260, 133 L.Ed.2d 183 (1995); *United States v. Hibbard,* 963 F.2d 1100, 1102 (8th Cir.1992), citing *United States v. Pillow,* 842 F.2d 1001, 1004 (8th Cir.1988). As a result, "when a warrant describes the sought for material 'in the graphic terms of the statute on the sexual exploitation of children the * * * [material] is described with all the particularity necessary to satisfy the Fourth Amendment.'"

*United States v. Koelling,* supra at 821, quoting *United States v. Dornhofer,* 859 F.2d 1195, 1198 (4th Cir.1988), cert. denied, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989). Lastly, as relates to the scope of any seizures pursuant to a Warrant, "[t]he general rule * * * is that police may only seize items described in the search warrant, absent an exception to the warrant requirement." *United States v. Robbins,* 21 F.3d 297, 297 (8th Cir.1994).

2. *Legal Analysis.* As noted, the Defendant challenges the Warrant, which was issued to search his residence, on three separate grounds, which we address individually.

a. *Was the Warrant Supported by Probable Cause?*

■ The Defendant contends that the information, which supported the issuance of the Search Warrant, was impermissibly stale, and that, in any event, there was an inadequate showing for the Warrant to issue. Neither contention has merit.

First, we find no fatal staleness in the probable cause showings. While, of course, we would prefer that evidence of wrongdoing, or of the likely presence of contraband, be more proximate to the issuance of the Warrant, the delays occasioned here were inappreciable, when viewed in the context of the charges against the Defendant, and the nature of the evidence being sought. Indeed, similar periods of delay have not been found lethal to a showing of probable cause under like circumstances.

For example, in *United States v. Rabe,* 848 F.2d 994, 995 (9th Cir.1988), a period of two months had elapsed before the issuance of a Search Warrant but, because of the applicant's averment, that pedophiles hoard child pornography, the Court concluded that such an interval of time did not lead to the obsolescence of the probable cause showings. Similarly, in *United States v. Harvey,* 2 F.3d 1318, 1323 (3rd Cir.1993), the Court did not regard information, that was two months old, to be unduly passé, although the Court, once again, relied upon the expertise of law enforcement in providing a generalized profile of pedophilic behavior. Likewise, the same result was reached in *United States v. Peden,*

891 F.2d 514, 518 (5th Cir.1989), even though the showing of probable cause had been dated by several months. While, again, the issuing Court had the benefit of a generalized opinion, that pedophiles often maintain a collection of child pornography, we do not find the provision of such expertise to be a necessary component to an adequate showing of probable cause.[19]

Here, Polyak's Affidavit recounted that the Defendant had been convicted, in 1985, of charges involving sexual improprieties with minor children, as well as the physical presence, within six weeks of the issuance of the Warrant, of a collection of photographs, which depicted young girls—some of whom exhibited physical signs that were consistent with sadomasochistic flagellation. Intermixed with the photographs were "letters, some of which were from out of state, were written to young girls," which admitted that "Infantilism [was the Defendant's] thing."

Given these showings, and the benefit of common sense, we believe that the issuing State Court Judge could reasonably infer that the actions of a pedophile were being investigated by law enforcement.. Further, we believe the inference to be reasonable that such a person, having been convicted of the same offense—albeit just over a decade ago—would continue to accumulate child pornography through the date the Warrant issued, that was first observed in his personal effects just six weeks previously. As the Court observed, in *United States v. Byrd*, 31 F.3d 1329, 1339 (5th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1432, 131 L.Ed.2d 313 (1995):

> Pedophiles use child pornography for gratifying their own sexual desires, reducing

**19.** As noted, each of these decisions—*Rabe, Harvey*, and *Peden*—involved a Warrant application which specifically included an affirmation that pedophiles would hoard child pornography, and would interact with other pedophiles in exchanging items of child pornography. While Polyak's Affidavit is devoid of a similar expression of opinion, in evaluating the adequacy of probable cause, we are not to leave our common sense and practical experience at the cusp of the inquiry. As the Supreme Court has reminded, in *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983), in assessing probable cause, we deal, not with "hard certainties," but with "probabilities," as to which we apply "common-sense conclusions about human behavior." "These are not technical; they are the factual and practical considerations of every day life in which reasonable and prudent men, not legal technicians, act." *Id.* at 231, 103 S.Ct. at 2328, quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

Given the practical realities of the Defendant's prior conviction for pedophilic offenses, together with the observations of a residential social worker, that the Defendant was clandestinely storing a collection of sexually suggestive portrayals of minor children, that were sufficiently disturbing as to prompt the social worker's complaint to law enforcement, as well as corresponding to "young girls" concerning "Infantilism," we do not believe that our appraisal of this showing is substantively hampered by the absence of a formalized opinion, which we find obviated by the commonsensical inference that those who treasure such prurience do so for extended viewing, and for trafficking with others who share the same persuasion. See, *Osborne v. Ohio*, 495 U.S. 103, 110–11, 110 S.Ct. 1691, 1696–97, 109 L.Ed.2d 98 (1990) (recognizing State's interest in destroying child pornography by proscribing the possession and viewing of the same); *New York v. Ferber*, 458 U.S. 747, 758, 102 S.Ct. 3348, 3355, 73 L.Ed.2d 1113 (1982) ("The legislative judgment, as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child."). It was Congress's informed judgment that Section 2252 was essential to protect children from sexual exploitation by regulating its distribution in interstate commerce, and "[w]e shall not second-guess [that] legislative judgment." *New York v. Ferber*, supra at 758, 102 S.Ct. at 3355.

Notably, the same three decisions—*Rabe, Harvey*, and *Peden*—all involved dated evidence of pedophilia that was "freshened," for probable cause purposes, by more recent evidence that the suspect had received, or would be receiving, child pornography. In *Harvey* and *Peden*, pedophilic convictions, which were, respectively, 14 and 10 years old, bore weight in the Court's probable cause assessment when considered with "fresh" evidence of similar conduct. In *Rabe*, the Court relied upon 2–year–old interceptions of child pornography, in finding probable cause for a subsequent search of the suspect's residence. While the Government urges that the Defendant's conviction, in 1985, as "freshened" by the social worker's observations, in 1996, permits the reasonable inference that a continuum of pedophilic conduct has occurred, we need not so conclude. For our purposes, we are persuaded that the prior conviction is not an irrelevant historical fact, when considered in the context of recent evidence that the same offensive conduct may be reoccurring. Accordingly, we have duly weighed that prior conviction in our assessment of probable cause.

the inhibitions of their victims and instructing their victims on proper sexual performance. In addition to citing the case law and expert testimony that links pedophilia to child pornography, we also note that common sense would indicate that a person who is sexually interested in children is likely to also be inclined, i.e., predisposed, to order and receive child pornography. We conclude that there is a strong enough link between pedophilic behavior and child pornography to allow a jury to find predisposition in this case.[20]

Of course, we need not proceed as far as did the Court in *Byrd*, as we only conclude that, based upon the totality of the showings before the issuing Judicial Officer, it was reasonably probable that a search of the Defendant's residence would uncover the type of contraband that is prohibited by Section 2252. See also, *United States v. Maxim*, supra at 397 (citing *United States v. Rugh*, supra at 754, for the proposition that the "continuous nature of ongoing child pornography ring and tendency of pedophiles to retain child pornography for a long period of time minimized lapse of time between information in the affidavit and execution of the search warrant."). In view of the totality of the circumstances, which were related in Polyak's Affidavit, we find and conclude that the State Court had probable cause, founded upon a substantial and timely factual basis, to warrant a search of the Defendant's apartment.

■ Lastly, even if we did not so conclude, we would be compelled, by the law of this Circuit, to find that, as to the staleness issue, the officers' reliance upon the State Court's Warrant was reasonable. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Indeed, the issue has been squarely laid to rest by the Court's decision in *United States v. Rugh*, supra. There, notwithstanding the fact that the contested Warrant was only supported by "sixteen-month-old information," which the Court acknowledged as being "stale," the Court agreed with the Trial Court that "the officers reasonably could have believed the material from 1988 would still be present because pedophiles typically retain child pornography for a long time." *United States v. Rugh*, supra at 753. Here, the transpiration of six weeks, between the social worker's first-hand observation of the offending photographs and the subsequent issuance of the Search Warrant, is an insufficient period of delay to render unreasonable the searching officers' reliance upon the Court-sanctioned Warrant.

#### b. Was the Scope of the Warrant Sufficiently Particularized?

In contesting the particularity of the Warrant which authorized the search of his apartment, the Defendant challenges both the seizure of the photographs that were found there, and his correspondence to and from others. Since these separate challenges involve different considerations, we address the Defendant's objections individually.

■ 1) *The Photographic Evidence.*[21] In describing the objects to be seized, the State either depict the demure innocence of a young girl's face, or the insouciance of youthful nakedness. While, undoubtedly, such guileless portrayals might trigger the lurid interests of those so disposed, we doubt that any equally neutral depiction would escape that same reaction from those so disposed. As the Supreme Court has noted, on more than one occasion, "depictions of nudity, without more, constitute protected expression." *Osborne v. Ohio*, supra at 112, 110 S.Ct. at 1697; *New York v. Ferber*, supra at 765 n. 18, 102 S.Ct. at 3359 n. 18.

On the other end of the spectrum, a goodly number of the photographs were uncompromisingly degrading to the prepubescents who will be so debased for as long as an image will adhere to photographic paper. In many instances, the

---

**20.** Apparently, in citing both "case law and expert testimony," the Court had reference to *Osborne v. Ohio*, supra at 103, 111–12 & n. 7, 110 S.Ct. at 1692, 1697 n. 7, and David B. Johnson, "Why the Possession of Computer–Generated Child Pornography Can Be Constitutionally Prohibited," 4 *Alb.L.J.Sci. & Tech.* 311, 326 & n. 141 (1994). See, *United States v. Byrd*, 31 F.3d 1329, 1336 n. 9 & 1339 n. 12 (5th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1432, 131 L.Ed.2d 313 (1995).

**21.** We have completed a review of the documentary evidence that was seized during the search of the Defendant's apartment. With some exception, the photographs run the gamut from the unseemly to the starkly disgusting. The exception includes a number of photographs which

Court Warrant specified: "Visual materials in all forms depicting minors [sic] genitalia and or sexual contact involving minors." According to the Defendant, this specification is so indefinite and vague as to license the searching officers to exercise their near unbridled discretion in seizing any depictions that they might judge to be offensive. In turn, the Government asserts that, viewed in the context of both Federal and State law, the Warrant's particularization was sufficiently specific.

We agree with the Defendant that, as to the "visual materials" category of evidence, the particularization of the Warrant leaves something, in the way of specificity, to be desired. Read literally, and disjunctively, the particularization of the Warrant would authorize the seizure of most medical texts, many art appreciation manuals, and a variety of child portraits—taken by loving parents—merely because the anatomical features, which distinguish the gender of the child, were displayed. Without more of a qualifier, the Warrant's authorization to seize "[v]isual materials * * * depicting minor[']s genitalia" would harvest wholly innocent visual depictions which bear no relationship to any criminal offense. Notwithstanding the Government's entreaty, that we gloss the presence of the "or" in this descriptor out of existence, we find no responsible basis to do so.

When read conjunctively, however, the same categorization of the objects for the search makes unmistakably clear that pedophilic depictions—that is, those which portray sexually explicit conduct involving minors—are the target of the Warrant. Although a parroting of the statutory language might have been preferable in delineating the scope of the search, we find nothing illusory, vague, or indefinite in the

conjunctive description of the objects to be seized. Paraphrasing the Court's observation in *United States v. Hurt,* 808 F.2d 707, 708 (9th Cir.), cert. denied, 484 U.S. 816, 108 S.Ct. 69, 98 L.Ed.2d 33 (1987), "the words used in the warrant to describe the material sought need no expert training or experience to clarify and limit their meaning," for "[a]ny rational adult person can recognize [ (v)isual materials * * * depicting minor[']s genitalia and * * * sexual contact involving minors] when he sees it."

Accordingly, we would apply the severance approach, adopted in *United States v. Fitzgerald,* 724 F.2d 633 (8th Cir.1983) (*en banc* ), cert. denied, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 538 (1984), in striking the disjunctive "or" from the categorization of "visual materials" that should be properly subject to search and seizure. See also, *United States v. Krasaway,* 881 F.2d 550, 552 (8th Cir. 1989). As so redacted, the remaining descriptor—namely, "[v]isual materials * * * depicting minor[']s genitalia and * * * sexual contact involving minors"—remains a valid expression of the scope of the authorized search. Here, we find no evidence that the inartful use of the "or" was the product of pretext or bad faith on the part of law enforcement. Rather, we attribute the inartfulness to the fact that the Warrant appears to have been drafted by a non-lawyer who may not have been fully abreast of the "[t]echnical requirements of elaborate specificity" or of "each judicial refinement of the nature of 'probable cause.'" *Illinois v. Gates,* supra at 235, 103 S.Ct. at 2330.

Therefore, we recommend that the Defendant's Motion to Suppress be granted as to that evidence which was seized pursuant to the descriptor: "Visual materials in all forms depicting minor[']s genitalia."[22]

identity of the child is unascertainable to the viewer, but certainly, enduringly, and distressingly, that identity is not unknown to the child involved, who will long bear the physiological and psychological scars that such indecency has been recognized to inflict. See, *Osborne v. Ohio,* supra at 111, 110 S.Ct. at 1697 ("[T]he materials produced by child pornographers permanently record the victim's abuse; [t]he pornography's continued existence causes the child victims con-

tinuing harm by haunting the children in years to come.").

22. In his Memorandum in Support of Pretrial Motions, the Defendant appears to concede that "visual materials ... depicting ... sexual contact involving minors" is not subject to suppression. See, *Defendant's Memorandum,* at 6. While the Government would have us read a sinister cast into the Warrant's reference to "minor[']s genitalia" by construing the language of the Warrant broadly, or by incorporating the allegations of

### 2) The "All Forms of Communications" Evidence.

■ While not dispositive of the issue before us, we think it instructive that, in amending Section 2252, Congress took pains to reject an "obscenity" standard in regulating the distribution of child pornography in interstate commerce, and adopted the "pictorial display" standard that had been enunciated by the Supreme Court in *New York v. Ferber*, supra at 765, 102 S.Ct. at 3359 ("We note that the distribution of descriptions or other depictions of sexual conduct, not otherwise obscene, which do not involve live performance or photographic or other visual reproduction of live performances, retains First Amendment protection."). See, e.g., 1984 *U.S.C.C.A.N.* 492, at 495–98 (1984).[23] Here, beyond requesting the Court's authorization to search and seize incriminating photographs, Polyak also sought permission to review and retain "any and all forms of communications with or about sexual performance by minors or concerning pedophile activity." [24] As is self-evident, this aspect of the Warrant sought to search written materials for their content and, as such, we find the requirement pertinent "that warrants [for

such materials] must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude." *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965). Here, however, the Warrant's specification of the objects of the search is too vague and ambiguous to constrain the searching officers, in any realistic sense, from exercising their discretion as to what objects were subject to search and what were not.

We are hard pressed to conceive of a particularization for the objects of a warranted search which would be any more conducive to a "general, exploratory rummaging" through the Defendant's writings than that contained in the Warrant here. *Coolidge v. New Hampshire*, supra at 467, 91 S.Ct. at 2038. Notwithstanding the Government's argument that, in some unstated fashion, the Warrant's specification somehow tracked the language of the Minnesota Statutes, the argument widely misses the mark, even if accepted as true. Without question, the term "sexual performance," as it is contained in the Warrant, is defined in Minnesota Statutes Section 617.246(d), but the fatal flaw in the Warrant's particularization is not the absence of a com-

---

the Polyak's Affidavit, we find no considered basis upon which to so expansively rewrite the provisions of the Warrant. It is one thing to blue-pencil an errant provision in a Warrant, but it is quite another to add language that was unquestionably available to the original drafter, and yet not employed in either his application for a Warrant, or in the Warrant itself. Had it been Polyak's intent to seize "lewd," "lascivious," "salacious," or whatever other qualifier would differentiate the potentially unlawful from the innocent depiction of the genitals of minors, he was free to do so—but we are not. In any event, by refusing to suppress evidence that depicts minor's genitalia *and* sexual contact involving minors, we seriously doubt that any lewd or lascivious depiction of minor's genitalia would escape lawful seizure.

**23.** As the House Judiciary Committee noted:

[B]y striking out the word 'obscene', eliminates as an element of the offense the requirement that the prosecution prove beyond a reasonable doubt that the child pornography transported, received or distributed meets the U.S. Supreme Court's three-prong test of obscenity in *Miller v. California*, 413 U.S. 15 [93 S.Ct. 2607, 37 L.Ed.2d 419] (1973). This will have the effect of making proof of these offenses easier. This comports with the decision of the

U.S. Supreme Court in *New York v. Ferber*, [458 U.S. 747] 102 S.Ct. 3348 [73 L.Ed.2d 1113] (1982).
1984 *U.S.C.C.A.N.* 492, 498 (1984).

**24.** As noted, we have reviewed the "communications" which were seized at the Defendant's apartment. Generally, these documents consist of the Defendant's correspondence to a variety of third-persons concerning his personal, sexual preferences. The correspondence is sated with hyperbole, adolescent descriptives, sexual make-believe, and repetitive, if not childish, double entendres. We understand the Government to argue that these writings are relevant to the commission of some State or Federal offense, such as the "solicitation of children to engage in sexual conduct," in violation of Minnesota Statutes Section 609.352, but we fail to see how a search for "communications about sexual performance by minors" is likely to uncover evidence of such a violation without wholly obliterating the Defendant's First Amendment right to generally converse or correspond with adults on the subject of sexual performances by minors, or on pedophilic activity. If the intent of the search was to uncover sexual solicitations of children, then the object of the search could have been so delineated without violating constitutional imperatives.

monly understood meaning for either "sexual performance" or "pedophile activity." Rather, the shortcoming is the Warrant's total failure to particularize the types of communications which would be violative of the law and, therefore, properly subject to search. Instead, the Warrant vests the searching officials with the authority to cast the broadest of nets in the hope of capturing a compendium of evidence which, thereafter, could be screened for any criminal content. This the Government may not do. See, *United States v. LeBron,* 729 F.2d 533, 537 (8th Cir.1984) (warrant rejected as a general search and seizure because it "provided no protection against subjecting a person's lawfully held property to a general search and seizure," such as to "allow officers to search indiscriminately throughout one's house and to seize anything they please."). By placing no meaningful constraints upon the searching officers' discretion, the second categorization of evidence to be seized was impermissibly overbroad.[25]

■ Once again, we believe that, consistent with the severance doctrine, the invalid portions of the Warrant should be stricken so as to leave that portion which is constitutionally sound. See, *United States v. Fitzgerald,* supra at 636–37. Of course, we understand the Government to contend that, even if overbroad, the Defendant's writings should not be suppressed as they were "in plain view," and were taken as an incident to a valid search under the first descriptive category of objects to be seized. We believe, however, that such an exercise would transgress the specific caveats upon which the severance doctrine was premised. In this respect, the Court, in *Fitzgerald,* cautioned as follows:

> We recognize the dangers which would attend on this approach were it carelessly administered. The police might be tempted to frame warrants in general terms, adding a few specific clauses in the hope that under the protection of those clauses they could engage in general rummaging through the premises and then contend that any incriminating evidence they recovered was found in plain view during the search for the particularly-described items. We believe, however, that careful administration of the rule will afford full protection to individual rights.

*Id.* at 637.

To preclude the abuse of the severance doctrine, the Court commended a three-part hurdle, which the Government must overcome if the items, that were not specifically described in the Warrant, are to be admissible. As related by the Court:

> [Such items] will not be admissible unless it appears that (a) the police found the item in a place where one would reasonably have expected them to look in the process of searching for the objects described in the sufficiently particular portions of the warrant, (b) the police found the item before they found all the objects

---

25. To underscore this point, we point to the Court's discussion, in *United States v. Koelling,* supra at 822, where the particularity of a Warrant, which sought to search for visual depictions of "child pornography," was addressed under the rubric of the First Amendment:

> [T]o the extent that the warrant might conceivably have permitted the inadvertent seizure of "child pornography," the possession of which is not otherwise criminal, few, if any, First Amendment values are implicated. The Supreme Court has noted that only a "tiny fraction" of pictures portraying the sexual acts of children might fall within the First Amendment's range. * * * Therefore, it is quite unlikely that a warrant such as the one before us would cause a police officer to seize materials protected by the First Amendment. Since the possibility is so small, the warrant is sufficiently particular.

Here, the same may not be said, for the focal point of the State Court Warrant is the seizure of "all forms of communications with or about sexual performance by minors or concerning pedophile activity." Given the pervasive expanse of this descriptor, we are unable to say that the prospect is small that materials protected by the First Amendment would not be seized. Indeed, we think the opposite would be unavoidably true. Had the Warrant particularized the types of communication—such as order forms or receipts for "child pornography," or written solicitations to minors to engage in such activities—a far different issue would be presented for our consideration. We find no saving grace to the unnecessary and, we conclude, impermissible expansiveness of this aspect of the State Court Warrant. See, e.g., *United States v. Stelten,* 867 F.2d 446, 450 (8th Cir.1989), cert. denied, 493 U.S. 828, 110 S.Ct. 95, 96, 107 L.Ed.2d 59 (1989).

described in the sufficiently particular portions of the warrant (that is, before their lawful authority to search expired), and the other requirements of the plain view rule—inadvertent discovery and probable cause to associate the item with criminal activity—are met.

*Id.*

No such showing has been made by the Government here and, indeed, we are convinced that no such showing could be made. First, the only portion of the Warrant which would remain valid, if the second descriptive category were stricken, is that relating to pictorial displays of sexual contact with minors. Given the voluminous collection of writings that were seized, we could not reasonably envision what form of inadvertence could discover, in the confines of hundreds of pages of documents—a substantial portion of which were handwritten—evidence of criminal conduct.

Moreover, despite the Defendant's reliance upon the severance doctrine, and the Government's invocation of the "plain view" exception to a Search Warrant requirement, the Government has not provided any evidence to suggest that the purportedly incriminating contents of the letters were found before all of the photographs were collected. Lastly, while we could stand corrected on this score, since an intensive examination of the contents of the Defendant's writings would have taken days to complete, our perusal of those letters failed to plainly disclose any clear violation of the State and Federal Statutes that the Government has drawn to our attention, nor has the Government specifically highlighted any such evidence for our review.

Therefore, we recommend that the Defendant's Motion to Suppress the evidence that was seized, pursuant to the second descrip-

tive category in the State Court Warrant, be granted.[26]

### c. Should the Warrant be Invalidated Because Items Outside the Scope of the Warrant Were Seized?

■ The Defendant correctly notes that items outside of the Warrant were seized by the searching officials, and he encourages us to invalidate the entire Warrant as having been abused. While there is authority, now outdated, which suggests that "[a] flagrant disregard for the limitations of a search warrant might make an otherwise valid search an impermissible general search and thus require the suppression or return of all evidence seized during the search," see, *Marvin v. United States,* 732 F.2d 669, 674–75 (8th Cir.1984), our Court of Appeals has more recently recognized that such a suppression is no longer allowable. In *United States v. Decker,* 956 F.2d 773, 779 (8th Cir.1992), the Court observed:

> The Supreme Court, however, has expressly dictated that the flagrant disregard standard applies only where the government exceeds the scope of the authorized search in terms of the places searched and not to cases in which the government indulges in excessive seizures. See *Waller v. Georgia,* 467 U.S. 39, 43 n. 3 [104 S.Ct. 2210, 2214 n. 3, 81 L.Ed.2d 31] (1984). According to Waller, where items are unlawfully seized but the places searched do not exceed the limits of the warrant, as long as the unlawfully seized items are suppressed, 'there is certainly no requirement that lawfully seized evidence be suppressed as well.' *Id.*

Since we have recommended that the unlawfully seized evidence be suppressed, there is no legitimate basis to generally invalidate the lawful portions of the State Court's Warrant.

NOW, THEREFORE, It is—

---

**26.** The severance doctrine appears to obviate an assessment of the Warrant under the *Leon* doctrine where, as here, we have no basis to conclude that the absence of particularity was the product of bad faith. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). As we have found, portions of the Warrant are a valid exercise of the Fourth Amendment's allowance of reasonable searches and seizures, and that portion of the Warrant, which was insuffi-

ciently particularized, will not be enforced if our recommendation is adopted. As a result, having recommended that the fruits of the invalid portion of the Warrant be suppressed, we believe that the Defendant's First Amendment rights have been properly preserved, without unnecessarily compromising the Fourth Amendment's sound preference for Search Warrants. Cf., *United States v. Decker,* 956 F.2d 773, 777–78 (8th Cir.1992).

ORDERED:

1. That the Defendant's Pretrial Motion for Disclosure of 404 Evidence [Docket No. 11] is GRANTED, as more fully detailed in the text of this Opinion.

2. That the Defendant's Motion to Compel Attorney for the Government to Disclose Evidence Favorable to the Defendant [Docket No. 12] is GRANTED, as more fully detailed in the text of this Opinion.

3. That the Defendant's Motion for Discovery [Docket No. 13] is GRANTED.

4. That the Defendant's Motion for Early Disclosure of Jencks Act Material [Docket No. 14] is GRANTED, as more fully detailed in the text of this Opinion.

5. That the Defendant's Motion for Government Agents to Retain Rough Notes [Docket No. 15] is GRANTED.

6. That the Defendant's Motion for a Bill of Particulars [Docket No. 19] is GRANTED.

AND, It is—

RECOMMENDED:

1. That the Defendant's Motion to Dismiss Indictment [Docket No. 10] be denied.

2. That the Defendant's Motion to Suppress Evidence Obtained by Search and Seizure [Docket No. 16] be granted, except as to that evidence which was seized pursuant to that portion of the Warrant which authorized the search and seizure of "[v]isual materials in all forms depicting minor[']s genitalia and * * * sexual contact involving minors."

3. That the Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 17] be denied as moot.

Michael J. HALEY, Plaintiff,

v.

Jonathan L. FIECHTER, Acting Director of the Office of Thrift Supervision, Defendant.

No. 4:93CV2625SNL.

United States District Court, E.D. Missouri, Eastern Division.

Feb. 5, 1997.

