UNITED STATES of America, Appellee,

v.

**Dale A. KOELLING, Appellant.**

No. 92–3574.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1993.

Decided May 7, 1993.

818

Larry Dean Kissee, Ash Flat, AR, argued, for appellant.

Lesa Bridges Jackson, Asst. U.S. Atty., Little Rock, AR, argued, for appellee.

Before WOLLMAN, Circuit Judge, ROSS, Senior Circuit Judge and KOPF,* District Judge.

KOPF, District Judge.

After a jury found Defendant Dale A. Koelling (Koelling) guilty of producing and receiving "child pornography" in violation of 18 U.S.C. §§ 2251(a) and 2252(a)(2) (1988), he was sentenced[1] to concurrent prison terms of 78 months. He appeals, claiming that: (1) the search warrant, the execution of which resulted in the seizure of evidence used at trial, was defective for lack of particularity, (2) the search warrant was defective because it was based upon stale information, and (3) the search warrant was defective because it was anticipatory in nature. Although concerned about the government's conduct in procuring and executing a search warrant when it had ample evidence of a crime in its possession,[2] we affirm.

I.

On July 30, 1991, postal inspectors learned from a mail-order photo-finishing business in Missouri that the company had received film for processing which it suspected was child pornography. The developed photographs displayed a young male sitting in a chair with his legs spread and underwear exposed, together with shots of an erect penis and buttocks. Pictured with the boy was an adult male who appeared to be 40 years of age. The return mailer indicated that a "Mrs. Dale Koelling," Route 1, Box 511, Mammoth Springs, Arkansas, had submitted the film.

Armed with this information, a postal inspector began an investigation of "Mrs. Koelling." Among other things, the inspector was able to determine that: (1) there was no "Mrs. Koelling" residing at the address given on the mailer, (2) there was an unmar-

---

* The HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

2. At oral argument, counsel for the government candidly conceded that the prosecution of Koelling could have taken place without obtaining the search warrant.

ried man named Dale Koelling living at the return address noted on the mailer, (3) as a result of prior investigations, Dale Koelling was known to have a "preference for young boys," (4) a school principal identified the boy in the photos by name and knew him to be a 14–year–old 7th grade student, (5) the boy lived with his parents, and (6) the boy and his parents lived near Koelling's residence.

Nine days after learning of the photos, the postal inspector submitted the following affidavit for search warrant to the Honorable Henry L. Jones, United States Magistrate Judge:

I, C.E. Gholson, being duly sworn, do hereby depose and state the following:

1. I am employed as a Postal Inspector, with the U.S. Postal Inspection Service, and assigned to Little Rock, AR. I have been employed as a Postal Inspector for more than 22 years. Over the past years, I have been involved in many investigations of violations of the protection of Children Against Sexual Exploitation Act, USC Sections 2252(a)(1) and (a)(2), and Illegal Mailings of Obscene Matter (18 USC, Section 1461).

2. I am personally familiar with the facts and circumstances surrounding this investigation, both from my own investigative activity, commencing on or about July 30, 1991, and from information obtained from other law enforcement officers who have communicated results of their investigations to me.

3. On July 30, 1991, officials with the Fo–Jo film processing company, 1812 Rock Rd., DeSoto, MO 63020 referred some photos of suspected child pornography to the Postal Inspection service for investigation. Fo–Jo is a large mail order photographic film processing company. They receive undeveloped film from customers, develop the film and mail the photos back to the customers. When employees of Fo–Jo detect what they suspect to be child pornography, they routinely refer the photos to the Postal Inspection Service for investigation.

4. The envelope/photo mailer referred on July 30, 1991 was addressed by the customer for delivery to Mrs. Dale Koelling, Rt. 1 Box 511, Mammoth Springs, AR 72554. The envelope contained negatives developed from the film submitted by the customer and twenty one (21) separate images, 2 copies of each image. One photo depicts a male approximately 40 years old and a young male approximately 15 years old with their faces side to side. Two other photos depict this older male alone. Most of the remaining photos are of the younger male, two of them are close-ups of the erect penis of the younger male. Three other photos are of the nude buttocks of the younger male. Others depict lascivious poses such as the younger male wearing shorts, reclining on a chair with his legs spread and underwear visible.

5. On August 6, 1991, I met with Fulton County, AR Sheriff Paul Martin and Deputy Sheriff Carrol Traw. They advised me that Dale Koelling lives alone at Rural Route 1, Box 511, Mammoth Springs, AR and that Dale Koelling has never been married and they have never heard of a Mrs. Dale Koelling. They further advised me that based on their knowledge gained through prior investigations, they believe Dale Koelling to be a homosexual with a preference for young boys. Both the sheriff and the deputy sheriff identified the older male in the photos I received from Fo–Jo to be Dale Koelling. Sheriff Martin took one photo of the young male which I received from Fo–Jo to the school in Salem, AR, the county seat. The school principal identified the boy in the photo as a seventh grade student, * * *, DOB * * *.[3] Sheriff Martin advised that he knows the parents of * * * and the family lives approximately 1–1½ miles from Dale Koelling.

6. Based on my training and previous experience, I know that Mr. Koelling exhibits the traits common to many pedophiles. I further know from this training and previous experience that pedophiles or collectors of this matter keep these materi-

---

**3.** For purposes of this opinion, there is no need to identify the boy or his parents, although they were named in the affidavit.

als for many months and years, and rarely, if ever, dispose of their collections. They do, at times, trade this material with other persons with similar interests. This behavior has been documented by other investigators and experts in the field throughout the country.

7. On or about August 13, 1991 I will personally transport these photos to the post office at Mammoth Springs, AR. They will be given to the rural mail carrier for delivery, as addressed, to Dale Koelling. Mr. Koelling's rural mailbox will be kept under surveillance until he gets his mail and returns to his residence. The search warrant sought pursuant to this supporting affidavit will then be executed.

8. Based on the above, I have probable cause to believe that on the premises described above in the Application and Affidavit for Search Warrant, will be located property which constitutes evidence of the commission of a criminal offense in violation of 18 U.S.Code, Section 2252(a)(1) and (a)(2); contraband or things otherwise criminally possessed, specifically child pornography, as herein defined; and property designed or intended for use and which has been used as the means of committing criminal offenses in violation of 18 U.S. Code, Section 2252(1)(1) and (1)(2).

Judge Jones issued a warrant to search for and seize the following:

(1) an envelope/photo mailer bearing the return address of Fo–Jo, 1812 Rock Road, DeSoto, MO 63020, bearing a postage meter strip dated July 30, 1991, addressed for delivery to Mrs. Dale Koelling, Rt. 1, Box 511, Mammoth Springs, AR 72554 and containing a number of photos, some of which depict a male, approximately 15 years old in lewd and lascivious poses.

(2) pictures, magazines and videocassette records, depicting minors engaged in sexually explicit conduct as defined in Title 18, United States Code, Section 225 [*sic*], that is actual or simulated:

    (a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

    (b) bestiality;

    (c) masturbation;

    (d) sadistic or masochistic abuse; or

    (e) lascivious exhibition of the genitals or pubic area of any person; hereinafter defined as "child pornography;"

(3) envelopes, letters and other correspondence constituting orders to buy or trade child pornography;

(4) books, documents, and records reflecting the producing, making, receipt or acknowledgment, shipping, billing or payment of orders to purchase, offers to purchase, or offers to trade child pornography;

(5) address books, mailing lists, supplier lists, advertising brochures or materials, and documents pertaining to the preparation, purchase or acquisition of names or lists used in connection with the purchase or trade of child pornography.

Armed with the warrant, the postal inspector used a mail carrier to make a controlled delivery of the packet of photos to Koelling's residence. Someone was observed retrieving the photo packet from the mailbox and entering the Koelling residence. After waiting a brief period of time, the authorities proceeded to execute the warrant and found Koelling and the boy pictured in the photos inside the residence. Koelling tried to destroy the photographs that were the subject of the controlled delivery, but he was stopped by the authorities before he could do so.

During a search of Koelling's home, the following items were found and seized:

Packet of photos from Fo–Jo, DeSoto, MO and mailed to Dale Koelling, Rt. 1, Box 511, Mammoth Springs AR.

Four black and white photos which appear to be of a young males [*sic*] genitals and buttock [*sic*].

Empty certified mail envelope addressed to Dale Koelling and bearing the return address of Nora Crick, 1316 170th St., Hammond, IN.

Two empty envelopes from Fo–Jo, DeSoto, MO and addressed for delivery to Dale Koelling.

Book entitled "Homosexual Incest."

Booklet entitled "A Hundred Naked Rebels."

Booklet entitled "Patio Studs."

Before trial, Koelling moved to suppress all of the items seized during the search of his house. Koelling's motion was denied. During trial, two of the black-and-white photos and the booklet "A Hundred Naked Rebels" were introduced into evidence[4] over Koelling's objections. Also introduced into evidence was the packet of photographs developed by the mail-order photo-finishing company.

## II.

### A. Particularity of Warrant

Koelling first argues that the search warrant was defective because it was not sufficiently particular in what was authorized to be searched for and seized. Koelling appears to be primarily concerned with the failure to suppress the black-and-white photos and the booklet entitled "A Hundred Naked Rebels."[5] Specifically, Koelling argues that the lack of particularity implicates his First and Fourth Amendment rights.

Although it is difficult to discern the precise boundaries of his argument, Koelling apparently fears that the warrant authorized the search for and seizure of lawfully possessed "adult pornography" which might be constitutionally protected, or that the warrant authorized the search for and seizure of lawfully possessed "child pornography" which might be constitutionally protected. We disagree.

■ The warrant was graphic. It authorized the search for and seizure of depictions of minors engaging in sexually explicit conduct as defined by 18 U.S.C. § 2256 (1988).[6] In general, we agree with both the Fourth Circuit and the Ninth Circuit that "when a warrant describes the sought for material 'in the graphic terms of the statute on the sexu-

al exploitation of children the ... [material] is described with all the particularity necessary to satisfy the Fourth Amendment.' " *United States v. Dornhofer,* 859 F.2d 1195, 1198 (4th Cir.1988), cert. denied, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989) (quoting *United States v. Wiegand,* 812 F.2d 1239, 1243 (9th Cir.), cert. denied, 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987)). See also *United States v. Rabe,* 848 F.2d 994, 997–98 (9th Cir.1988) (warrant issued for search of residence which limited search to materials "depicting minors engaged in sexually explicit conduct as those terms are defined in [the statute]" held sufficiently particular). We believe the warrant at issue in this case satisfied the particularity requirements of the Fourth Amendment and therefore obviated any justifiable concern that First Amendment values might be trampled on. We come to these conclusions for the following reasons.

First, the statute, and hence the warrant which quoted the statute, is explicit about what the sexual conduct depicted in the contraband must involve. For example, the listing of sexual intercourse by type, bestiality, masturbation, and sadistic or masochistic abuse could hardly be more explicit in terms of defining sexual conduct. While the words "lascivious exhibition of the genitals or pubic area" are perhaps less explicit than the other definitions,

> "Lascivious" is no different in its meaning than "lewd," a commonsensical term whose constitutionality was specifically upheld in *Miller v. California,* 413 U.S. 15, 25, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973), and in *[New York v.] Ferber,* 458 U.S. [747] at 765, 102 S.Ct. [3348] at 3359 [73 L.Ed.2d 1113 (1982)].

---

4. These documents were apparently introduced into evidence to show that the defendant was predisposed to commit the crime.

5. We have examined these documents. We believe a "reasonable police officer" could have found that they contained "child pornography" as defined in the statute and warrant. The photos and the booklet contained snapshots of naked prepubescent males, some in a state of erection. Moreover, there are handwritten notations in ink on two of the photos depicting a prepubescent male which indicate the subject is 12 years old.

6. The warrant contained a typographical error in the citation to the statute. Paragraph 2 of the authorization cited "Title 18, United States Code, Section 225 [sic]." The proper reference was to section 2256. This error is not significant because in the same paragraph the warrant recites nearly verbatim the definitions found in section 2256. Thus, there can be no doubt that the magistrate judge and those who would execute the warrant knew precisely what was being authorized.

*United States v. Wiegand,* 812 F.2d 1239, 1243 (9th Cir.), cert. denied, 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987).

Thus, the discretion of the law enforcement officers was quite limited as to what type of sexual conduct must be involved. This being true, the warrant certainly limited the scope and intensity of any search and seizure.

■ Second, the warrant further limited the discretion of the law enforcement officers by requiring that the contraband must involve "child pornography" regarding "minors." [7] The terms "child pornography" and "minors" as used in the affidavit and the warrant are not so uncertain as to make the warrant defective, even though the reference to "minors" or "children" might infrequently permit the mistaken seizure of "adult pornography." The fact that some adults look like minors and some minors look like adults does not mean a warrant is overbroad. Most minors look like minors and most adults look like adults, and most of the time most law enforcement officers can tell the difference. The Constitution requires no greater precision. *Wiegand,* 812 F.2d at 1243; *Dornhofer,* 859 F.2d at 1198 & n. 2.

■ Third, to the extent that the warrant might conceivably have permitted the inadvertent seizure of "child pornography," the possession of which is not otherwise criminal,[8] few, if any, First Amendment values are implicated. The Supreme Court has noted that only a "tiny fraction" of pictures portraying the sexual acts of children might fall within the First Amendment's range. *New York v. Ferber,* 458 U.S. 747, 773, 102 S.Ct. 3348, 3363, 73 L.Ed.2d 1113 (1982). Therefore, it is quite unlikely that a warrant such as the one before us would cause a police officer to seize materials protected by the First Amendment. Since the possibility is so small, the warrant is sufficiently particular. *Wiegand,* 812 F.2d at 1243.

**B. Staleness of Warrant**

Koelling next argues that the search warrant was defective because it was based on stale information. He points out that at the time the application for the search warrant was presented to the magistrate judge, the information from the film developing company was already nine days old. Furthermore, he argues, most of the other information contained in the affidavit referred to conduct which had occurred or may have occurred in the past, and did not reference any law enforcement suspicions that any crime was taking place on Koelling's property at the time of the application. We disagree with Koelling's view that this information, admittedly nine days old, was stale.

■ There is no bright-line test for determining when information is stale. Whether the averments in an affidavit are sufficiently timely to establish probable cause depends on the particular circumstances of the case, and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit. *United States v. McCall,* 740 F.2d 1331, 1336 (4th Cir.1984). Time factors must be examined in the context of a specific case and the nature of the crime under investigation.

■ ■ It is a goal of 18 U.S.C. §§ 2251–2258 to stamp out the production and distribution of child pornography, based upon conclusions in relevant literature and upon a legislative determination that child pornography is harmful to the child victim even years after the original misdeed took place.[9] It would

---

7. According to the language of the statute, a "minor" is under the age of 18 years. 18 U.S.C. § 2256(1).

8. 18 U.S.C. §§ 2251 and 2252 do not make the mere possession of child pornography a crime. *Wiegand,* 812 F.2d at 1243. Some element of shipment, transportation, or mailing in interstate commerce is required. This is not to say, however, that possession cannot be criminalized. *Osborne v. Ohio,* 495 U.S. 103, 110 & n. 6, 110 S.Ct. 1691, 1697 & n. 6, 109 L.Ed.2d 98 (1990)

(upholding an Ohio statute which proscribed the possession and viewing of child pornography).

9. See *New York v. Ferber,* 458 U.S. at 757 n. 8, 102 S.Ct. at 3355 n. 8; S.Rep. No. 95–438, 95th Cong. 2nd Sess.1978, reprinted in 1978 U.S.C.C.A.N. 40; H.R.Rep. No. 536, 98th Cong. 2nd Sess.1984, reprinted in 1984 U.S.C.C.A.N. 492. Indeed, the presentence report in this case suggests that the boy was so traumatized that he requires the presence of at least one parent at all times.

seem, then, that a mere nine days between the discovery of pornographic photos of a teenage boy and the application for a search warrant are insignificant and militate against a finding of staleness, particularly where, as here, the minor depicted in the photo was known to be a minor at the time the warrant was sought. See also *Rabe*, 848 F.2d at 997 (relying in part on expert opinion that pedophiles collect materials for years and based in part on knowledge of defendant's receipt of child pornography in 1984, search warrant issued in 1986 was not based on stale information).

In this case, the investigators were busy during the nine days before they sought the search warrant. Between July 30, 1991, and August 6, 1991, an investigation was conducted to determine whether there was a "Mrs." Koelling, and Dale Koelling's true identity was unearthed. The investigation also revealed the identity of the teenage boy in the photographs, the fact that he was a minor, and that he lived near Koelling. The investigation also resulted in the discovery that Koelling had a sexual preference for young boys.

Upon compiling this information, together with the photographs in the mailer, and drawing on his 22 years of experience which indicated that Koelling was exhibiting behavior common to pedophiles such that he could be presumed to be maintaining a pornography collection without disposing of the contents, the postal inspector was in a position to apply for a warrant on August 8, 1991. In determining whether probable cause existed for the search of Koelling's residence, common sense and reasonableness dictate that the 9–day–old information in this case was not stale. Hence, the warrant was not defective.

## C. Anticipatory Nature of Warrant

█ Koelling also argues the search warrant was defective for the reason that the warrant authorized an "anticipatory search." In finding that probable cause exists such that a search warrant may issue, a magistrate must ordinarily determine that in light of all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Tagbering*, 985 F.2d 946, 949 (8th Cir.1993). In this case, Koelling argues that because the postal inspector had the offending photographs in his possession at the time he applied for the warrant, the warrant was defective because probable cause to believe such items were on the premises did not exist. We disagree.

The magistrate judge in this case issued an "anticipatory warrant," a device this circuit has had occasion to consider only recently. Id. at 949 & n. 4. This circuit has now joined with six other circuits which have upheld anticipatory warrants. Here, as in *Tagbering*, the affidavit in support of the warrant specifically stated that the warrant would not be executed until a controlled delivery of the package was made to Koelling's house.[10] That the contraband was not located at Koelling's house at the time the warrant was issued is immaterial, so long as there was probable cause to believe the contraband would be there when the warrant was executed. The statement in the affidavit that the warrant would not be executed until delivery of the package to Koelling's house could be confirmed was sufficient to establish probable cause for the issuance of the warrant since the package would likely be found on the premises. Id. at 950.

In this case, after the postal inspector observed the delivery of the photo mailing envelope, he waited 5 to 10 minutes before executing the search warrant. Since Koelling was discovered in possession of the photographs when the postal inspector entered his house, it is clear that the execution of the warrant occurred after the controlled delivery had taken place.

---

**10.** In *Tagbering*, the U.S. Customs Service intercepted a package containing 900 grams of hashish oil and 142 grams of marijuana stuffed inside a toy. The Customs Service notified police and postal inspectors in Kansas City. The police and postal inspectors replaced most of the drugs with look-alike substances in preparation for a controlled delivery of the package to Tagbering's house. The affidavit in support of the search warrant for Tagbering's house stated that the search would not begin until after the controlled delivery was made. The warrant authorized a search for the package and any records reflecting drug trafficking and/or any drug paraphernalia.

In relying upon the statement in the affidavit in support of the application for the warrant that the search would not occur until after the controlled delivery was made, the magistrate judge had probable cause to issue the search warrant based on the probability that the photo mailer would be on the premises when the premises were searched. As a consequence, the warrant was not defective even though it was anticipatory.

### III.

The materials seized during the execution of the search warrant should not have been suppressed. Accordingly, the district court's judgment refusing to suppress the materials is affirmed.