**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

10-1357
_____

UNITED STATES OF AMERICA

v.

DUSTAN DENNINGTON,
                              Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania

District Court No. 1:07-cr-00043-001

District Judge: The Honorable Sean J. McLaughlin
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 17, 2010

Before: SLOVITER, BARRY, and SMITH, *Circuit Judges*

(Filed:  October 7, 2010)
_____

OPINION
_____

Smith, *Circuit Judge*.

    Dustan Dennington was arrested and charged with receipt and possession of child

pornography in violation of 18 U.S.C. § 2252, after a search of his home executed pursuant

to a warrant turned up a computer on which were stored between 10 and 150 unlawful

1

images. Dennington moved to suppress the images on the ground that the warrant was issued without probable cause. The District Court denied the motion, and Dennington entered a guilty plea on the condition that he be allowed to appeal the suppression ruling and thus the judgment of conviction. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291, and will affirm.

I

The following facts are drawn from the affidavit filed by Immigration and Customs Enforcement Agent James W. Kilpatrick in support of the warrant application in this case. The affidavit contains information derived from three separate sources. First, Chad Frank, an individual charged with (and now convicted of) several child-pornography offenses, advised federal agents that he (Frank) had organized and held a gathering of "Boy Lovers"[1] in Philadelphia in June or July 2001, and that Dennington had traveled from his home in Erie to attend. During that gathering, according to Frank, "an individual known as TJ . . . surreptitiously videotaped the sexual exploitation of a minor." The affidavit states that Frank "believe[d]" that Dennington was in possession of a copy of that videotape. Frank also indicated his belief, apparently based on online instant-message conversations, that Dennington (who used the screen name "weatherboy") had a twelve-year-old "young friend" (i.e. a minor with whom he had a physical relationship) named Ryan.

---

[1] The affidavit advises that "Boy Lover" is a label adopted by "men with a physical, emotional, and psychological attraction to prepubescent boys, who do not believe that loving relationships with boys are damaging, so long as the interests of the boys are respected."

2

A second informant, Thomas Pidel (who has also been convicted of offenses including the possession of child pornography), provided additional information pertaining to Dennington. Pidel allegedly met Dennington (who used the screen names "weatherboy," "weatherfuck," and "weatherbitch") through an online chat room called "boylove," where they "had contact regarding the trading of child pornography and the molestation of children." Pidel corroborated Frank's statement regarding Dennington's "young friend" Ryan, and a review of internet chats between the two men revealed graphic discussions of Dennington's relationship with Ryan in addition to more general comments about Dennington's attraction to "boys boys boys under 14." However, the chat logs quoted in the affidavit reveal no conversations about child pornography or the trading thereof. Pidel also informed agents that Dennington operated a subscription website, www.weatherboy.org, through which he sold nude images and "special interest photographs."

In July 2006, armed with Frank's and Pidel's statements, law enforcement operatives began an undercover investigation. Posing as a 54-year-old male with an interest in seven- to ten-year-old boys, Erie County Detective Jessica Lynn joined Dennington's weatherboy.org website. Upon gaining access to the site Lynn learned that while it advertised for sale depictions of a "young boy who jerks off on camera and webcam as well as nude photos," in actuality the only individual pictured was Dennington himself.[2] Lynn also joined Dennington's Yahoo group (groups.yahoo.com/group/weatherboy), where other group

---

[2] Dennington's age is not provided in the affidavit, but we presume that he was not a minor at the

3

members had posted numerous photographs of their genitalia.  The affidavit does not assert that any of the images posted to the "weatherboy" group contained child pornography or other illegal material.  On July 10, 2006, Lynn discovered that Dennington had posted (using his "weatherfuck" screen name) to his Yahoo group a link to another such group, "geeks'n'glasses'n'nerds," located at groups.yahoo.com/group/geeksnglassesnnerds.  This group is described as existing "[f]or the appreciation of nerdy and geeky boys.  Especially wearers of glasses and red haired boys."[3] Lynn joined this group as well, and thereupon observed numerous images (supplied by the group's subscribers) of suspected underage males exposing their genitalia.  Lynn downloaded nine such photographs and submitted them to a pediatric urologist, who offered her expert opinion that the individuals in five of the photographs were "highly likely" to be minors.  Pursuant to a subpoena, Yahoo! Inc. confirmed that the "weatherfuck" screen name belonged to Dennington and that the e-mail address associated with the account was "dustan@weatherboy.org."

---

time of the events in question.

[3] The affidavit does not specify whether "weatherfuck" offered this description in the course of posting the link, or whether the operators and/or members of the "geeks'n'glasses'n'nerds" group supplied the description themselves. Nor does it specify where the description appears: whether Dennington wrote or pasted it into his post to the "weatherboy" group, or whether Lynn obtained it from the "geeks'n'glasses'n'nerds" group during the course of her investigation. The affidavit notes the existence of this description in precisely the passive-voice phrasing offered above.

Special Agent Kilpatrick filed his affidavit, and the Magistrate Judge issued the warrant, on November 1, 2006. It was executed shortly thereafter,[4] and the fruits of that search led to Dennington's arrest and guilty plea. This timely appeal ensued.

II

The Fourth Amendment to the Constitution directs that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." As interpreted by the Supreme Court, the existence of probable cause is to be assessed on the basis of a "totality-of-the-circumstances analysis," which tasks the Magistrate Judge with "mak[ing] a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). *See also United States v. Vosburgh*, 602 F.3d 512, ___ (3d Cir. 2010). In reviewing the Magistrate Judge's decision to issue a warrant, we ask whether she had "a 'substantial basis' for determining that probable cause existed." *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002) (quoting *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993)). While this standard affords "great deference" to the Magistrate Judge's determination, *Gates*, 462 U.S. at 236, our review must be meaningful and not merely a "rubber stamp." *Zimmerman*, 277 F.3d at 432.

---

[4] The United States' brief and the District Court's opinion both indicate that the warrant was

5

In the event that a search was undertaken pursuant to a warrant later determined to be invalid, the remedy is exclusion from trial of any evidence obtained by way of the illegal search. *See, e.g.*, *id.* at 438.

There are, however, various exceptions to the exclusionary rule. Perhaps the most prominent of these, that for good faith on the part of law enforcement officers, has potential application to this case. *United States v. Leon*, 468 U.S. 897 (1984). The purpose of the exclusionary rule is to deter law enforcement officers from acting in violation of the Fourth Amendment. *Id.* at 906 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). This goal is not well served by suppressing evidence obtained in objectively reasonable reliance on a Magistrate Judge's determination that probable cause supported issuance of a warrant. *Id.* at 918–20. Moreover, policemen are not attorneys, and "an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id.* at 921. Thus so long as the officer acted reasonably and in good faith in obtaining and executing the warrant, evidence gathered in pursuance thereto will not be suppressed even if it is later determined that the Magistrate Judge's probable-cause determination was in error. *Id.* at 922. We have noted the existence of four scenarios in which law enforcement should be seen as having failed to act with good faith, such that exclusion remains on the table notwithstanding the issuance of a warrant:

1. Where the Magistrate Judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

---

executed on November 1, but it is not actually clear from the record that this is the case.

6

2. Where the Magistrate Judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;

3. Where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

4. Where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Zimmerman*, 277 F.3d at 436–37 (citing *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001)).

A

The first question before the Court is whether the District Court had a "substantial basis," *id.* at 432, for believing that the totality of the circumstances summarized above was sufficient to give rise to a "fair probability" that contraband or evidence of criminal activity (viz., child pornography) would be found at Dennington's home in the form of pictures, videos, computer files, and so forth. *Gates*, 462 U.S. at 238. The evidence in support of an affirmative answer is thin enough that were we required to decide the issue we would have a hard time upholding the Magistrate Judge's issuance of the warrant, even under the deferential standard of review that applies in this context. The affidavit contains very little pointing to the conclusion that Dennington was in possession of child pornography. The only direct evidence to that effect is Frank's statement that he "believe[d]" Dennington to be in possession of a copy of a video made in 2001. Not only is there a potential staleness problem with an informant's statement about events occurring five years prior, *see, e.g.*, *United States v. Yusuf*, 461 F.3d 374, 391–92 (3d Cir. 2006); the statement of belief is also not supported

7

by anything in the way of particular factual allegations, as the affidavit does not explain how Frank came to arrive at his belief.

Aside from the video, the only mention of actual child pornography in the affidavit are the images in the "geeks'n'glasses'n'nerds" group, but there is no evidence that Dennington ever downloaded any such images. There is not even anything in the affidavit to indicate that he was a member of the group; the closest we can get is to infer that, having posted a link on his own Yahoo group's page, Dennington probably knew of the linked site's contents, and that he thus had probably visited and downloaded images from it in the past. There is persuasive authority that this line of reasoning is flawed. *See United States v. Falso*, 544 F.3d 110, 120–21 (2d Cir. 2008) (Sotomayor, J.). In *Falso*, the defendant was not alleged to have been a member or subscriber of a child-pornography website; all the warrant application could say was that he "'*appeared*' to 'have gained *or* attempted to gain' access to a site that contained" child pornography. *Id*. at 113. Without any "specific allegation that Falso accessed, viewed or downloaded child pornography," the court was unwilling to find probable cause. *Id.* at 121. The facts of this case are weaker even than those in *Falso*, as there is no allegation that Dennington even "appeared" to have attempted to gain access to the "geeks'n'glasses'n'nerds" group: all the warrant-issuing Magistrate Judge knew was that he had briefly advertised the group on a single occasion. This case is not close to what we confronted in *Vosburgh*, which held that repeated attempts to access a file labeled as child pornography from a particular IP address provided probable cause to search the home of the

8

user of the computer employing that IP address. 602 F.3d at ___. Nor is it like *United States v. Shields*, 458 F.3d 269 (3d Cir. 2006), which held that membership in two Yahoo groups devoted to exchanging child pornography, combined with the use of a suggestive e-mail address ("LittleLolitaLove"), was sufficient to establish probable cause. Again, the affidavit does not assert that Dennington was a member of "geeks'n'glasses'n'nerds," and his screen names and e-mail address are not suggestive of pedophilia in any way that is obvious to the Court.[5] There is nothing in the affidavit to show that Dennington ever attempted to access the group or the images contained therein. Those images are thus of very little value in assessing whether probable cause existed for searching Dennington's home.

Of course, as we have said probable cause is a "totality of the circumstances" inquiry: perhaps by combining the two mentions of actual child pornography, tenuous though they are, with the remaining contents of the affidavit the Magistrate Judge might have reached the conclusion that there was a fair probability that Dennington was a child pornographer hiding a cache in his home. The remainder of the affidavit, however, provides little to support that conclusion. While Dennington advertised his website in such a way as to suggest that he published illegal materials, for all the Magistrate Judge knew he had in fact posted only perfectly legal (indeed, constitutionally protected) images of non-obscene adult pornography. His website and personal Yahoo group thus have very little probative force. Nor are the alleged (but unsubstantiated) conversations with Pidel regarding the trading of child

---

[5] To be sure, "weatherfuck" and "weatherbitch" are vulgar, but they do not indicate a preference for

9

pornography very weighty: without knowing their contents we cannot rely on them to conclude that Dennington ever possessed any such contraband. As the defense points out, for all the affidavit reveals, Dennington's contributions to the alleged conversations might have been to repudiate the trade in illegal images. The balance of the affidavit's contents surely give probable cause to believe that Dennington is a pedophile and possibly a child molester, but the fact is that to be the former is not in and of itself a crime, and the warrant did not seek evidence that he is the latter. Moreover, as the Second Circuit has explained, "[i]t is an inferential fallacy of ancient standing to conclude that, because members of group A (those who collect child pornography) are likely to be members of group B (those attracted to children), then group B is entirely, or even largely composed of, members of group A." *Falso*, 544 F.3d at 122 (quoting *United States v. Martin*, 426 F.3d 68, 82 (2d. Cir. 2005) (Pooler, J., dissenting)) (internal quotation marks omitted). Evidence of Dennington's apparent sexual preference for children accordingly does not go very far towards providing probable cause for the warrant.

The District Court was of the view that cobbling together all of these individual, relatively insubstantial allegations produced a whole that was greater than the sum of its parts, and that the warrant was thus properly issued. We are not so sure; even given the deference owed the Magistrate Judge's determination, this is a close case. We need not

---

children.

10

decide the issue, however, because as we shall explain the *Leon* good faith exception applies, and the sanction of exclusion is therefore inappropriate.

B

As discussed above, evidence obtained under the auspices of a facially valid search warrant is generally admissible even if a reviewing court later determines that probable cause did not in fact exist at the time the warrant was issued. At first glance, the evidence that is the subject of this appeal appears to have been obtained in good faith, so Dennington's task is to convince us that one of the four recognized exceptions applies. He has failed to do so.

Dennington relies on exceptions one and three. First he argues that the "warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Zimmerman*, 277 F.3d at 437. The sole basis for this argument is a citation to cases from the First and Ninth Circuits holding that to establish probable cause in a child pornography case, the warrant application must establish that the images forming the basis for the applying officer's suspicion are pornographic. *See United States v. Battershell*, 457 F.3d 1048, 1051 (9th Cir. 2006); *United States v. Brunette*, 256 F.3d 14, 17 (1st Cir. 2001). Thus Dennington argues that because the images found on the "geeks'n'glasses'n'nerds" page were not attached to the application and were not described in any detail in the affidavit, the probable cause determination was so deficient that no reasonable officer could have relied upon it. The first response to this argument is that neither of those cases were controlling in this Circuit at the time the warrant issued. (Indeed

11

this Court has never cited either case before today.)  Moreover, other circuits have reached

the opposite conclusion to *Brunette*.  *See, e.g.*, *United States v. Chrobak*, 289 F.3d 1043,

1045 (8th Cir. 2002) (stating that detailed descriptions are unnecessary because "particularity

is satisfied when the warrant describes material sought in the terms of the statute") (citing

*United States v. Koelling*, 992 F.2d 817, 821 (8th Cir. 1993)).  We need not adopt either rule

in this case; we merely observe that a reasonable officer should be forgiven for not

meticulously hewing to *Brunette* and *Battershell*.

A second answer is to say that because the probable cause determination takes into

account the totality of the circumstances, the amount of information in the affidavit might

well have led a reasonable officer to believe that his failure to attach photos or provide lurid

descriptions would be made up for by the remaining details regarding Dennington's sexual

proclivities.  While we have expressed skepticism as to whether the affidavit's allegations

add up to a substantial basis for finding probable cause, we have no trouble concluding that a

belief that the question could be answered affirmatively was not "entirely unreasonable."

*Zimmerman*, 277 F.3d at 437.

Dennington's second attempt to get out from under the good faith rule is no more

availing than his first.  He argues that the affidavit was "deliberately or recklessly false," *id.*

at 436, because it omitted several facts that would tend to undermine the probable cause

determination.  This basis of this argument is the Supreme Court's holding, in *Franks v.*

*Delaware*, 438 U.S. 154 (1978), that exclusion is warranted "if the magistrate or judge in

issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923. The same principle applies to deliberately or recklessly made material omissions. *United States v. Frost*, 999 F.2d 737, 742–43 & n.2 (3d Cir. 1993). An omission is "made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know" in evaluating the warrant application. *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000).

In seeking the protection of the *Franks* rule, Dennington first notes (citing the United States' sentencing memorandum in its criminal action against Pidel) that prior to this case, none of the seven computers that had been searched based on tips provided by Pidel had been found to contain child pornography. This, he says, so undermines Pidel's reliability that Special Agent Kilpatrick's failure to mention it rendered the affidavit materially false. We conclude, however, that full disclosure of Pidel's historical success rate as an informant would not have made a difference to the Magistrate Judge's probable cause determination. In addition to the seven empty computers, the sentencing memorandum notes that Pidel's tips had led to the discovery of a computer disk containing child pornography.[6] They also pointed to a second individual who had already been the subject of an independent investigation that turned up a computer on which child pornography had been stored. While this discovery did

---

[6] The Court is unsure what to make of the defendant's unsupported assertion that "finding child pornography on a computer disk is not the equivalent of finding child pornography on a computer." Of course at a trivial level this is true, but we see no reason for thinking that the distinction is in any way material.

not (because of the happenstance of a separate police operation) result from Pidel's tip, it tends to support his credibility *vis-à-vis* fellow members of the child pornographer community. Finally, Pidel's statements do not themselves allege that Dennington was in possession of child pornography. We therefore have some doubt whether they were especially material to the probable cause determination. Their main value seems to be their corroboration of several of the affidavit's other allegations regarding Dennington: his "weatherboy" moniker, his predilection for young boys, his "young friend" named Ryan, and so forth. So even if the omission rendered Pidel's statements worthless (and we do not think this to be true), they would probably not have affected the Magistrate Judge's ruling.

Dennington next argues that Detective Lynn knew that he was not a member of the "geeks'n'glasses'n'nerds" group, and that the failure to disclose this fact in the affidavit was both material to the probable cause determination and in bad faith. It is, however, not clear that Lynn actually knew that Dennington was not a member of the group. Indeed, outside of the briefs (which are not evidence), the record does not reflect any averment on Dennington's part that he was not a member; the District Court noted that Dennington "does not affirmatively represent that he never joined the [geeks'n'glasses'n'nerds] web group." (This makes it hard to take altogether seriously the claim that Lynn should have *known* his nonmembership to be a fact.) Instead of evidence, Dennington relies on a chain of inferences: in the screen capture video recording one of Lynn's expeditions into "geeks'n'glasses'n'nerds," a link reading "Members" appears to have been previously

14

accessed, which indicates that Lynn had entered that page before. She does not click the link on the video, so there is no recording of what the "Members" page contained. Dennington posits that it contained a list of the members of the group, and therefore asserts that Lynn must have seen that he was not on the list: otherwise she would have recorded that fact as evidence of his guilt, and the affidavit would have reflected his membership as a factor weighing in favor of finding probable cause. He therefore reasons that the failure to record the contents of the "Members" page implies that his name was not on the membership list, and that Lynn knew it.

The most serious flaw in this chain of logic is the ungrounded assumption that the contents of the "Members" page consisted of a list of the group's subscribers. That is certainly one possibility, but it is also possible that the page contained some other collection of information relevant to the members of the group: contact information to the group administrator, perhaps, or a mission statement, or logistical information. The repeated assertion that the "Members" page provided a list of all subscribers is not supported in the record, either by the screen-capture video or by evidence proffered by the defense. We cannot agree with the defense that Lynn must have known that Dennington was not a member of the group, because he has not provided evidence that the underlying claim is actually true. The most that can be said is that there is no evidence of Dennington's membership, but for that very reason the Magistrate Judge cannot have relied on a conclusion that he was a member when she decided that probable cause was present. Dennington's

membership in the "geeks'n'glasses'n'nerds" group thus cannot have been material to the Magistrate Judge's determination, and there is therefore no basis for the *Franks* challenge.

The final asserted bad-faith omission is the government's failure to mention in the affidavit that the contents of the "geeks'n'glasses'n'nerds" group were composed predominantly of images of adult males, and that images of suspected minors were few and far between. This fact is of no moment. The theory behind the group's relevance to the probable cause finding, as we have explained above, is that by promoting the "geeks'n'glasses'n'nerds" group on his own page, Dennington demonstrated knowledge of the contents of the group and a likelihood that he had downloaded images hosted there (or at least that he had downloaded similar images elsewhere). The ratio of licit-to-illicit photographs contained on the page in question is not important to this chain of logic—though we reiterate that the government's theory is a rather thin reed on which to hang a warrant application. We are not convinced that Lynn or Kilpatrick acted in bad faith in preparing the affidavit. A reasonable officer might have concluded that the Magistrate Judge would have ruled that whatever the context, the presence of any images of children at all, coupled with the subtly provocative group description[7] and the facts supplied elsewhere in the affidavit, merited a finding that probable cause was present. The omitted information was not material, and for all that appears, the law enforcement officers presented their affidavit in good faith and reasonably relied on the warrant in executing their search of Dennington's home.

---

[7] "For the appreciation of nerdy and geeky boys. Especially wearers of glasses and red haired boys."

16

## III

Although we express doubt regarding the existence of probable cause in this case, we are not convinced that suppressing the evidence obtained by the possibly illegal search would deter future harmful conduct, because the government acted in good faith reliance on a facially valid warrant. Accordingly the District Court's judgment of conviction will be affirmed.